[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The Defendant, Bernard A. Nevas, filed a Motion For Discharge Of Notice of Lis Pendens on June 19, 1994.
The plaintiffs filed the Lis Pendens, dated May 24, 1996 and recorded in the Town of Weston Land Records on May 30, 1996.
The Complaint seeks, inter alia, specific performance of a contract for the sale of a newly constructed single family residence by the defendant to the plaintiff. The property is located at 81 Old Farm Road, Weston, Connecticut (the "Property"). At the time of the execution of the contract the plaintiffs delivered a $45,500 deposit to the defendant, which deposit was accepted and retained by the defendant. CT Page 365
The court heard two days of testimony on August 8, 1996 and August 28, 1996.
In November 1995 the plaintiffs made an offer to purchase the property for $455,000.00. Prior to executing the contract which defendant wanted executed by December 1, 1995, the plaintiffs engaged the services of Above All Home Inspection Co. The inspection report did not disclose any material deficiencies. The inspector described the home as "a colonial and the fabrication of the construction is known as platform framing". After reviewing the report the plaintiffs executed the contract which called for a closing on February 1, 1996. In December 1995, National West Bank issued a commitment to the plaintiffs which was valid until April 8, 1996.
Prior to the closing, the plaintiffs invited an acquaintance, Craig Golding, who was a carpenter to tour the house in anticipation of making minor improvements after the closing. At the conclusion of his tour, Mr. Golding remarked to the plaintiffs, "Nice modular home". The more credible evidence leads to the conclusion that Mr. Golding's remark was the first time the Sammarcos learned that the house was of modular construction. Their initial reaction was as expected. They were shocked.
There was not one scintilla of evidence to infer that Bernard Nevas made any misrepresentation regarding the modular construction. He testified that the listing agreement and the construction plans, which were given to the Sammarcos prior to the execution of the contract, showed the home to be of modular construction.
Frank Sammarco is a physician. Cynthia Sammarco is an attorney. They were purchasing their first home. Neither had any knowledge of construction. They initially concluded that modular construction was synonymous to poor construction.
Their initial reaction was to request a return of their deposit and a rescission of the contract. The defendant refused to refund the deposit and insisted that the Sammarcos proceed with the purchase. The Sammarcos educated themselves and concluded that modular construction did not infer poor quality construction.
From February 1996 through May 15, 1996, both parties made good faith efforts to salvage the transaction. There were CT Page 366 meetings at the site attended by the principals. The attorneys for both sides exchanged numerous correspondence. The attorneys had meetings and exchanged telephone calls. The defendant responded to and completed a "punch list" of defective items, as set forth in a second home inspection performed for the Sammarcos. The defendant also arranged for an extension of the new construction home warranty which had expired.
A considerable debate ensued between the parties with respect to the determination of the date to be used to calculate closing adjustments. On the evening before the scheduled May 15, 1996 closing date, the plaintiffs acquiesced to the March 1, 1996 adjustment date.
In anticipation of the firmly scheduled May 15, 1996 closing, the Sammarcos terminated their lease and scheduled movers. On the morning of May 15, 1996, the Sammarcos' attorney was notified that Bernard Nevas was not proceeding with the closing because he had reservations about interfacing with the Sammarcos during the one year warranty period following the closing.
On the afternoon of May 15, 1996, and for a few days thereafter, the attorneys for the Sammarcos and Nevas attempted to draft an agreement wherein a neutral third party would determine the legitimacy of any warranty claims raised by the Sammarcos. Draft agreements were exchanged, but the attempt at compromise was rejected by the defendant.
Thereafter, the defendant changed his mind and stated that he was ready to close. He would not, however, compensate the plaintiffs for the costs they claimed to have incurred as a result of the aborted May 15th closing.
This court concludes, after two days of testimony, that the plaintiff his established that there is probable cause to sustain the validity of their claim for specific performance in accordance with C.G.S. § 52-325b.
A probable cause hearing is not a trial on the merits, nor is it intended as such. The plaintiff need not establish his claim by a preponderance of the evidence. The court, while not making a final decision on the merits, weighs the testimony given and the documentary proof presented. The trial courts' duty is to weigh the probabilities based on the facts and to exercise their broad discretion in determining whether there is probable cause to CT Page 367 sustain the lis pendens. Sanstrom v. Strickland,11 Conn. App. 211.
The Motion For Discharge of Notice of Lis Pendens is denied. Dated at Stamford, Connecticut, this 14th day of January, 1997.
RICHARD J. TOBIN, JUDGE